**In re UNR INDUSTRIES, INC., Unarco Industries, Inc., UNR, Inc., UNR–Rohn, Inc., (Alabama), UNR–Rohn, Inc., (Indiana), Dart, Inc., Jobal Tube Co., Inc., National Plastics, Inc., UNR Products, Inc., Leavitt Structural Tubing Co., and Folding Carrier Corporation, Debtors.**

**Bankruptcy Nos. 82 B 9841 to 9851.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Nov. 8, 1984.

---

Schwartz, Cooper, Kolb & Gaynor, Chtd., Chicago, Ill., for debtors.

Winston & Strawn, Chicago, Ill., for Official Committee of Unsecured Creditors.

Bell, Boyd & Lloyd, Chicago, Ill., for Holco Corp. and N.V.M. (USA), Inc.

Hopkins & Sutter, Chicago, Ill., for Bethlehem Steel Corp.

## MEMORANDUM OPINION AND ORDER

EDWARD B. TOLES, Bankruptcy Judge.

This cause coming on to be heard on the Application of Debtor LEAVITT STRUCTURAL TUBING CO. [LSTC] For Authority To Approve Classification of Claims Or Interests In The Leavitt Structural Tubing Co. First Amended Plan of Reorganization [the Application]; and the Court, having considered the Application filed by LSTC, represented by SCHWARTZ, COOPER, KOLB & GAYNOR, CHTD., and the statements of counsel with respect thereto, the written responses of the OFFICIAL COMMITTEE OF UNSECURED CREDITORS [the Committee], represented by WINSTON & STRAWN, and HOLCO CORPORATION and N.V.W. (USA), INC., represented by BELL, BOYD & LLOYD, and the oral response of BETHLEHEM STEEL CORPORATION, represented by HOPKINS & SUTTER, and having heard the testimony of witnesses called by LSTC and the Committee in support of their respective positions, and having afforded the parties an opportunity for hearing on September ber 28, 1984, and being fully advised in the premises.

The Court Finds:

1. On July 29, 1982, LSTC filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. Since that date, LSTC has continued to operate its business and manage its property as debtor-in-possession.

2. On May 18, 1984, LSTC presented an Application For Authority To Approve Classification of Claims Or Interests In The Leavitt Structural Tubing Co. Plan Of Reorganization.

3. LSTC was organized on February 25, 1980, for the purpose of engaging in the business of manufacturing large structural steel tubing.

4. LSTC was and remains a wholly-owned subsidiary of UNR Products, Inc.

5. UNR Products, Inc. was and remains a wholly-owned subsidiary of UNR, Inc. and UNR, Inc. was and remains a wholly-owned subsidiary of UNR Industries, Inc. [UNR].

6. LSTC's initial capitalization was $1,000 consisting of $100 in capital stock and $900 in paid-in surplus.

7. In order to finance the business and general operations of LSTC, prior to July 29, 1982, UNR and its subsidiary UNR, Inc. transferred substantial amounts of money to LSTC.

8. In the course of its operations up to July 29, 1982, LSTC engaged in business generating millions of dollars in sales, entered into a lease pursuant to the terms of which it paid an average of $300,000 per month in rent, and incurred millions of dollars of trade debt.

9. LSTC proposes to create a separate class in its Plan of Reorganization for its obligations to UNR and UNR, Inc., which would subordinate the claims of UNR and UNR, Inc. to the claims of LSTC's unsecured creditors.[1]

---

1. At the hearing on this matter, it was disclosed that as a result of clerical error, the original plan filed by LSTC on May 10, 1984, failed to include the claim of UNR, Inc. in this special

10. LSTC never executed a note to evidence an obligation to repay the foregoing funds to UNR or UNR, Inc.

11. LSTC did not pay or accrue interest on the amounts transferred to it by UNR and UNR, Inc.

12. Neither UNR nor UNR, Inc. received or accrued interest receivable for the amounts transferred to LSTC.

13. No repayment terms were agreed upon among UNR, UNR, Inc. and LSTC with respect to the foregoing sums.

14. The foregoing sums transferred to LSTC are reflected in LSTC's balance sheet, under the section for Liabilities and Equity, in a separate subsection as "Due to Affiliates." As of July 29, 1982, this amount was $17,565,049.00.

15. At the time of initial capitalization, UNR and its chief financial officer, Robert Penn, recognized that in the course of its future operations, LSTC would be engaged in a business requiring and generating large volumes of money for which LSTC would require substantial additional capital.

16. LSTC's chief financial officer who also serves as chief financial officer of UNR and UNR, Inc., regarded and intended LSTC's obligations to repay sums advanced by UNR and UNR, Inc. to be subordinate to LSTC's obligation to pay debts owing to its non-affiliated trade creditors.

17. Robert Penn, whose testimony the Court expressly finds to be consistent and credible, testified repeatedly in regard to the contributions made by UNR and UNR, Inc. to LSTC that "[w]e treat it as equity."

18. At the time the foregoing sums were transferred to LSTC by UNR and UNR, Inc., LSTC could not have borrowed a similar amount of money on comparable terms from an informed outside source.

19. LSTC, together with UNR and UNR, Inc., utilize a court-approved and common cash management system known as "Zero Balance Account."

20. Pursuant to this cash management system, funds were systematically transferred between LSTC and UNR and UNR, Inc.

21. Such transfers by LSTC to UNR and UNR, Inc. were not repayments of loans or payments of interest.

The Court Concludes and Further Finds:

1. The question before the Court involves what is to be done with the $17,565,049.00 which was transferred by UNR and UNR, Inc. to LSTC between February 25, 1980, when LSTC became incorporated, and July 29, 1982, when these bankruptcy proceedings were instituted. The Committee takes the position that these cash transfers should be treated as unsecured debt, to be paid on the same basis as LSTC's other unsecured debt owed to non-insiders, for purposes of LSTC's proposed plan of reorganization.

LSTC takes the position that the cash transfers between UNR, UNR, Inc. and LSTC were in the nature of capital contributions, which were used by LSTC to capitalize its business and maintain its operations during its first 17 months of existence. LSTC's proposed plan of reorganization would create a separate class for the claims of UNR and UNR, Inc., whose claims would be paid in full only after all other unsecured claims against LSTC have been paid under the Plan. According to LSTC, subordination of these claims would be consistent with the actual status of UNR and UNR, Inc., as its parent companies and its actual, though indirect, equity owners.

2. The Court may equitably subordinate a claim or group of claims to other similar or dissimilar claims against a debtor, where the following three conditions are met. First, the Court must find that the claimant engaged in some type of inequitable conduct. Second, the misconduct must have resulted in an injury to other creditors

class. The First Amended Plan of Reorganization, filed October 26, 1984, corrects this clerical error.

or conferred an unfair advantage on the claimant. Third, the subordination of the claim(s) at issue must be consistent with the basic provisions and spirit of the Bankruptcy Code. *See e.g. Machinery Rental, Inc. v. Herpel (In re Multiponics, Inc.),* 622 F.2d 709, 713 (5th Cir.1980). Each of these conditions have been met in this case.

3. The Committee suggests that LSTC failed to establish the first of the above three factors: inequitable conduct on the part of UNR and UNR, Inc. The Court disagrees. The law does not require that the underlying misconduct must involve some element of moral turpitude. The conduct need only be *inequitable.*

UNR and UNR, Inc. caused LSTC to be built and maintained in operation for 17 months with insider loans of $17,565,-049.00 and a token equity capitalization of $1,000.00. *See Benjamin v. Diamond (In re Mobile Steel Co.),* 563 F.2d 692, 703 (5th Cir.1977) (application of objective standard to determine whether a business enterprise is undercapitalized). Without doubt, UNR and UNR, Inc. chose this method of capitalization for reasons of convenience and sound business judgment. An inevitable consequence of this method of capitalization, was to place UNR and UNR, Inc. on a par with all other non-insider unsecured creditors of LSTC, at least insofar as the accountants were concerned. So when this big structural steel tubing manufacturing facility got into financial difficulty, its indirect equity owners had only one thousand dollars of equity capital at risk. *That's* inequitable. *Pepper v. Litton,* 308 U.S. 295, 309–10, 60 S.Ct. 238, 246–47, 84 L.Ed. 281 (1939).

4. This has placed UNR and UNR, Inc. in a more advantageous position with reference to other non-insider unsecured creditors of LSTC than they would have occupied if they had funded LSTC with adequate capital contributions.

5. The equitable subordination of the claims of UNR and UNR, Inc. would be consistent with the basic provisions and spirit of the Bankruptcy Code. The Committee suggests that the subordination of these claims would be unfair to the unsecured creditors of UNR and UNR, Inc. The Court disagrees.

UNR owns 100% of UNR, Inc. which in turn owns 100% of UNR Products, Inc., which in turn owns 100% of LSTC. If UNR and UNR, Inc. can successfully reorganize, their unsecured creditors will in all likelihood be paid in full. If UNR and UNR, Inc. are forced to liquidate, LSTC becomes an asset which can be sold to satisfy unsecured claims against its parents. To the extent these parties might possibly suffer prejudice, the Court concludes that the equities attendant to the circumstances of LSTC's unsecured trade creditors are weightier than those of the unsecured creditors of its parents.

6. The Court also considers that, the plan now before the Court is probably the only feasible plan of reorganization which can be proposed with reference to LSTC. No party interested in these estates will benefit if LSTC is forced into liquidation through inability to propose a feasible, alternate plan of reorganization. The Committee is reminded that the exhaustive litigation over the question of whether the Chapter 11 case of LSTC should be converted to a case under Chapter 7 was resolved in LSTC's favor. This Court is inclined to permit the reorganization process to continue.

7. The Court rejects the Committee's argument that UNR and UNR, Inc. have placed themselves in a position of conflict of interest, by directing LSTC to prosecute the instant Application. LSTC appears as debtor-in-possession, and therefore, as fiduciary for its own unsecured creditors. Under the circumstances, LSTC would be in violation of these fiduciary obligations if it had failed to prosecute the instant Application.

8. The Court rejects the Committee's assertion that LSTC's proposed plan would effect the *disallowance* of the claims of UNR and UNR, Inc. These claims are not in fact disallowed. The payment of these

claims will only be *delayed,* as a result of this Court's action.

9. The Court rejects the Committee's claim that LSTC's proposed plan *impairs* the claims of UNR and UNR, Inc. LSTC's proposed plan of reorganization will largely preserve the status quo between these companies, as that *status quo* has been credibly described by Robert Penn.

10. The Official Committee of Asbestos-Related Plaintiffs [Asbestos Plaintiffs], through its counsel, DE FREES & FISKE, submitted proposed findings of fact and conclusions of law in reference to this matter. The Asbestos Plaintiffs did not actively participate in the hearing of this matter. In their submission, the Asbestos Plaintiffs, in essence, suggest that LSTC should defer its attempt to reorganize for various equitable reasons, until all the other UNR companies have filed proposed plans of reorganization. The Court cannot predict when, if ever, the remaining debtors involved in these procedurally consolidated cases will be prepared to reorganize. LSTC is ready now. The concerns raised by the Asbestos Plaintiffs are noted by the Court, but the reorganization attempt of LSTC shall be allowed to proceed.

11. This cause constitutes a core proceeding as defined in section 157(b)(2)(O) of the United States Code, as amended by section 104(a) of the Bankruptcy Amendments and Federal Judgeship Act of 1984. 98 Stat. 333.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Application for Authority to Approve Classification of Claims or Interests in the LEAVITT STRUCTURAL TUBING CO. Plan of Reorganization be, and the same is hereby allowed.